UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED 2019 JUN 24 A 11: 01
DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| PENSION BENEFIT GUARANTY CORPORATION,<br>A United States Government Agency<br>1200 K Street, N.W.<br>Washington, D.C. 20005,<br><br>*Plaintiff*,<br><br>v.<br><br>Community Action Agency of Central Alabama<br>As Plan Administrator of the Community Action Agency of Central Alabama Defined Benefit Pension Plan<br>504 Autauga Street<br>Wetumpka, AL 36092<br><br>*Defendant*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action<br>) No. 2:19-CV-445<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT OF THE PENSION BENEFIT GUARANTY CORPORATION

Plaintiff Pension Benefit Guaranty Corporation ("PBGC") files this Complaint against the Defendant, Community Action Agency of Central Alabama, Inc. ("CAACA"), as the administrator of the Community Action Agency of Central Alabama Defined Benefit Pension Plan ("Plan"), and states:

1. This action arises under Title IV of the Employee Retirement Income Security Act of 1974, *as amended*, 29 U.S.C. §§ 1301-1461 (2012 & Supp. V 2017) ("ERISA").

2. PBGC brings this action, pursuant to 29 U.S.C. §§ 1342(c) and 1348, requesting that this Court issue a decree (i) terminating the Plan; (ii) appointing PBGC as the statutory trustee of the Plan, (iii) establishing September 30, 2017, as the termination date of the Plan, and

1

(iv) ordering CAACA, and any other person or entity having possession, custody, or control of any records, assets, or other property of the Plan or any documents needed to determine benefits payable under the Plan, to transfer, convey, and deliver all such items to PBGC. Upon termination and trusteeship of the underfunded Plan by PBGC, PBGC will use its insurance funds to pay pension benefits to the Plan's participants, subject to ERISA's statutory limits.

## JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. §§ 1303(e)(3), 1342(f).

4. Venue is proper in this district pursuant to 29 U.S.C. §§ 1303(e)(2), 1342(g).

## PARTIES

5. PBGC is the federal agency and wholly owned United States government corporation established pursuant to 29 U.S.C. § 1302(a) to administer the pension plan termination insurance program created by Title IV of ERISA. When an underfunded pension plan covered under Title IV terminates, PBGC pays statutorily guaranteed pension benefits to retired employees who participate in the pension plan. *See* 29 U.S.C. §§ 1321, 1322. PBGC has its principal place of business at 1200 K Street, N.W., Washington, D.C. 20005.

6. CAACA was a nonprofit corporation established under the laws of Alabama. CAACA conducted business at 504 Autauga Street, Wetumpka, AL 36092.

7. CAACA is the Plan's sponsor and administrator ("Plan Administrator") within the meaning of 29 U.S.C. §§ 1002(16) and 1301(a)(1).

## STATUTORY BACKGROUND

8. PBGC may institute proceedings to terminate a defined benefit pension plan whenever it determines that the plan has not met the minimum funding standards required by the Internal Revenue Code or that the plan will be unable to pay benefits when due. 29 U.S.C. § 1342(a)(1), (2).

9. PBGC may institute proceedings to terminate a defined benefit pension plan whenever it determines that termination is necessary to protect the interests of the participants. 29 U.S.C. § 1342(c).

10. After determining that a pension plan should be terminated and notifying its plan administrator of such determination, PBGC may "apply to the appropriate United States district court for a decree adjudicating that the plan must be terminated in order to protect the interests of the participants or to avoid any unreasonable deterioration of the financial condition of the plan or any unreasonable increase in the liability of the [PBGC insurance] fund." 29 U.S.C. § 1342(c). Alternatively, PBGC and the plan administrator may enter into an agreement to terminate the plan. *Id.*

11. When an underfunded defined benefit pension plan terminates, PBGC typically becomes statutory trustee of the plan and, subject to certain statutory limitations, uses PBGC's insurance funds to pay the plan's unfunded benefits. *See* 29 U.S.C. § 1322.

12. The termination date of a pension plan is either agreed upon by PBGC and the plan administrator or, in the absence of an agreement, established by the district court. 29 U.S.C. § 1348(a)(4).

3

13. Upon issuing a termination decree under 29 U.S.C. § 1342(c), the district court must appoint and authorize a trustee to terminate the pension plan in accordance with Title IV of ERISA. 29 U.S.C. § 1342(b), (c). PBGC may request its appointment as trustee in any case. 29 U.S.C. § 1342(b)(1).

## FACTUAL BACKGROUND

14. CAACA established the Plan, effective October 1, 1997, to provide pension benefits to its employees.

15. The Plan is a defined benefit pension plan covered by Title IV of ERISA. *See* 29 U.S.C. §§ 1002(35), 1321(a). The Plan has a total of 251 participants.

16. On or about September 30, 2017, CAACA ceased operations and terminated substantially all of its employees. On or about June 25, 2018, CAACA filed a voluntary Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Middle District of Alabama. On February 6, 2019, the bankruptcy case closed.

17. Because CAACA liquidated in the Chapter 7 bankruptcy proceeding, the Plan is abandoned.

18. PBGC estimates that the Plan is underfunded, with benefit liabilities of $8,843,555 and only $5,072,505 in assets. Absent the relief sought herein, the Plan does not have a sponsor to provide funding and does not have an administrator to manage assets and to continue to pay benefits to the participants.

19. On December 11, 2018, CAACA's bankruptcy counsel informed PBGC that CAACA's bankruptcy representative, Elaine Pace, declined to execute an agreement with PBGC ("Agreement"), which would terminate the Plan, appoint PBGC as the Plan's statutory trustee,

and establish the Plan's effective termination date as September 30, 2017; rather Ms. Pace referred PBGC to Bill Gillespie, Jr. to execute the Agreement.

20. Upon information and belief, Bill Gillespie, Jr. is the last known Chairman of the Board of Directors for CAACA.

21. Therefore, on January 25, 2019, pursuant to 29 U.S.C. § 1342, PBGC sent to CAACA c/o Bill Gillespie, Jr., the Chairman of the Board of Directors for CAACA, a notice of PBGC's determination ("Notice of Determination") that the Plan has not met the minimum funding standards required under 26 U.S.C. §§ 412 and 430, that the Plan will be unable to pay benefits when due, and that the Plan must be terminated in order to protect the interests of the Plan's participants. The Notice of Determination also states PBGC's intention to seek Plan termination, appointment of PBGC as statutory trustee of the Plan, and establishment of September 30, 2017, as the effective date of the Plan's termination.

22. On February 7, 2019, upon receipt of the Notice of Determination, Mr. Gillespie, through counsel, declined to execute the Agreement terminating the Plan, appointing PBGC as statutory trustee, and establishing September 30, 2017, as the Plan's effective termination date. Copies of the Notice of Determination, the Agreement, and the cover letter are attached as Exhibit A, which is incorporated herein by reference.

23. In addition, on February 7, 2019, CAACA's chapter 7 bankruptcy trustee, Carly Wilkins, also declined to execute the Agreement terminating the Plan, appointing PBGC as the Plan's statutory trustee, and establishing September 30, 2017, as the Plan's effective termination date.

5

## COUNT I

24. PBGC realleges and incorporates by reference paragraphs 1 through 23.

25. After PBGC determines that a pension plan covered by Title IV of ERISA should terminate, ERISA authorizes the agency to apply to a United States district court for a decree adjudicating that the pension plan must be terminated to protect participants' interests. 29 U.S.C. § 1342(a), (c).

26. PBGC has determined under 29 U.S.C. § 1342(a)(1), (2), that the Plan should terminate. As mentioned above, PBGC issued to CAACA c/o CAACA's Chairman of the Board of Directors the Notice of Determination that the Plan has not met the minimum funding standards, will be unable to pay benefits when due as a result of underfunding and abandonment, and must be terminated to protect the interests of the Plan's participants.

27. Accordingly, this Court may issue a decree terminating the Plan.

## COUNT II

28. PBGC realleges and incorporates by reference paragraphs 1 through 27.

29. Upon issuing a termination decree under 29 U.S.C. § 1342(c), a United States district court must appoint a trustee of the terminated pension plan, which, upon application, may be PBGC. 29 U.S.C. § 1342(b)(1).

30. PBGC is willing and able to serve as statutory trustee of the Plan.

## COUNT III

31. PBGC realleges and incorporates by reference paragraphs 1 through 30.

32. A pension plan's termination date ("Plan Termination Date") is either the date agreed upon by PBGC and the plan administrator, or, in the absence of such an agreement, the date established by the district court. 29 U.S.C. § 1348(a)(3), (4).

33. The Plan Administrator is CAACA, but no one is willing to act on CAACA's behalf and execute the Agreement with PBGC to establish the Plan Termination Date.

34. Because an agreement between PBGC and the Plan Administrator has proven to be not possible, the Plan Termination Date will be the date established by this Court.

35. The Plan Termination Date of September 30, 2017, is appropriate because, as of this date, CAACA had ceased operations. Thus, Plan participants' expectations that the Plan would continue ceased as of September 30, 2017.

36. The Court should establish September 30, 2017, as the Plan Termination Date.

## COUNT IV

37. PBGC realleges and incorporates by reference paragraphs 1 through 36.

38. Under 29 U.S.C. § 1342(d), a court-appointed trustee is authorized, among other things, to pay plan benefits and manage plan assets in accordance with Title IV of ERISA.

39. To carry out its statutory duties with respect to the Plan, the court-appointed trustee must receive all Plan assets and all documents relating to: (1) the Plan; (2) the Plan participants; and (3) the Plan assets.

40. The Court should order the transfer to PBGC of all of the Plan's assets and documents, wherever located, as an incident of appointing PBGC as statutory trustee of the Plan.

**WHEREFORE**, PBGC respectfully requests that the Court grant judgment on all counts and issue a decree for the following relief:

1. Adjudicate that the Plan is terminated pursuant to 29 U.S.C. § 1342(c);

2. Appoint PBGC as statutory trustee of the Plan pursuant to 29 U.S.C. § 1342(c);

3. Establish September 30, 2017, as the Plan Termination Date pursuant to 29 U.S.C. § 1348(a);

4. Order CAACA and all other persons or entities having possession, custody, or control of any records, assets, or other property of the Plan or any documents required to determine Plan benefits, to transfer, convey, and deliver all such items to PBGC; and

5. Grant any and all other relief this Court deems just and proper.

Dated: June 21, 2019

Respectfully Submitted,

_____
DANIEL ROBERTSON
Florida Bar Number: 1010844
MELISSA NGO
VA Bar Number: 87854
Attorneys for Plaintiff
JUDITH STARR
General Counsel
CHARLES FINKE
Deputy General Counsel
ANDREA WONG
Assistant General Counsel
PENSION BENEFIT GUARANTY CORPORATION
Office of the General Counsel
1200 K Street, N.W.
Washington, D.C. 20005
Telephone: (202) 229-6573
Fax: (202) 326-4112
Emails: Robertson.Daniel@pbgc.gov;
Ngo.Melissa@pbgc.gov; and efile@pbgc.gov